NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0182n.06
Case No. 19-3473

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 30, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| BRYAN MATHIS, | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
|     Defendant-Appellant. | ) | |

Before: GUY, THAPAR, and BUSH, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge.** When police officers searched defendant Bryan Mathis's apartment, they found a gun, ammunition, and marijuana. Mathis is a felon and marijuana is a controlled substance, so a jury convicted him for the crimes of possessing the found items. But the jury found him not guilty of possessing the gun in furtherance of a drug-trafficking crime. Nevertheless, his sentence on the drug conviction was enhanced because he possessed the gun in connection with the drug offense. Mathis argues that applying the enhancement was error and his trial counsel was ineffective for failing to challenge it. Mathis also argues that two searches violated the Fourth Amendment. We affirm.

**I.**

A confidential informant told the police that a man was dealing marijuana out of an apartment in Euclid, Ohio. Based on the tip, officers waited for the apartment's residents to place

their trash out for collection. By prior arrangement, the trash collector gave the police the bags collected from the residence and the police searched through their contents. Inside they found 10–15 clear plastic sandwich bags, mail addressed to Mathis and his girlfriend, approximately 30 marijuana stems, and an envelope which, based on subsequent lab tests, contained marijuana residue. Officers conducted a second trash pull two weeks later and found bags and a FedEx box with the return and addressee labels torn off, all of which contained marijuana residue. All the while, officers kept an eye on the residence. The informant had given them a physical description of the alleged drug dealer and, during the month of the trash pulls, officers saw a man matching that description come and go from the house. The man was Mathis, and at the time he had outstanding warrants for drug trafficking offenses.

These details were memorialized in an affidavit which led to a warranted search of Mathis's apartment soon after. After detaining Mathis, his girlfriend, and their young daughter, the searching officers found a loaded handgun under a mattress and ammunition for other firearms elsewhere in the apartment. They also found $1,905 in small bills, a scale, packaging materials with marijuana residue, and four cell phones. A grand jury later indicted Mathis for knowingly possessing a firearm and ammunition as a felon, knowingly possessing a firearm in furtherance of a drug-trafficking crime, and possessing marijuana with the intention of distributing it, all in violation of federal laws. *See* 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A)(i); 21 U.S.C. § 841(a)(1), (b)(1)(D).

Mathis moved to suppress the evidence found during both of the trash pulls and the search of his apartment. He maintained that he had an expectation of privacy regarding the garbage bags because, according to him, they "were not on the curb, were not abandoned, were not open and available for anyone to take[.]" The affidavit did not state where exactly the trash had been placed,

which Mathis believed was an intentional omission, so he also asked for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The court held a single hearing on all the issues and, after hearing testimony from the officer who orchestrated the pulls, found that the bags were indeed left on the curb. The motion was denied and the evidence was used at trial. Now on appeal, Mathis argues that the evidence should have been suppressed.

## II.

The Fourth Amendment preserves the right of the people to be free from unreasonable searches and seizures and sets minimum requirements for warrants. U.S. Const. amend. IV. We enforce it against the states via the Fourteenth Amendment's Due Process Clause. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). In *California v. Greenwood*, the Supreme Court considered the constitutionality of a warrantless search of trash left at the curb and decided that the relevant question was whether the people who set out the trash "manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 39 (1988). The Court concluded that the *Greenwood* respondents, who were criminal defendants, lacked such an expectation, explaining:

> [R]espondents exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it, respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.

*Id.* at 40–41 (internal citations and footnotes omitted).

As the government points out, we have followed *Greenwood* many times before, specifically in *United States v. Bruce*, 396 F.3d 697 (6th Cir.), *vacated in part on reh'g*, 405 F.3d 1034 (6th Cir. 2005). What *Bruce* and *Greenwood* arguably take for granted, however, is that someone other than a trash collector could lawfully handle the curbside refuse. *See Bruce*, 396 F.3d at 707 ("When trash leaves the owner's control and is put out for collection, anyone is free to rummage through it, whether for an investigative or any other purpose.") (citing *Greenwood*).

Mathis says that is not the case in his neighborhood. By local ordinance, "[w]hen waste has been set out on private premises, no person other than a Service Department employee or a trash collection agent of the City shall remove any waste therefrom except with the consent of the owner or lessee of the premises." Euclid, Ohio, Codified Ordinances § 941.15 (available at https://codelibrary.amlegal.com/codes/euclid/latest/euclid_oh/0-0-0-13638#JD_ 941.15). So while Mathis's curbside trash was physically accessible to "children, scavengers, snoops, and other members of the public," *Greenwood*, 486 U.S. at 40, those parties are not "free to rummage through it," *Bruce*, 396 F.3d at 707, as they might be in other jurisdictions. Mathis says that same limit applies to police officers. And he reasons that, under the original understanding of the Fourth Amendment, officers may not do what private citizens cannot, absent a warrant. *Cf.* William Baude & James Y. Stern, *The Positive Law Model of the Fourth Amendment*, 129 Harv. L. Rev. 1821, 1823 (2016); *Carpenter v. United States*, 138 S. Ct. 2206, 2268 (2018) (Gorsuch, J., dissenting); *but see Greenwood*, 486 U.S. at 43 (rejecting the alternative argument that the garbage seizure was unreasonable because it was "impermissible as a matter of [state] law").

Mathis did not raise this argument at the district court, which means we review it only for plain error. *United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016). Mathis must therefore demonstrate that the district court committed plain error that not only affected his substantial

rights, but also "seriously affects the fairness, integrity, or reputation of judicial proceedings." *Id.* (quoting *United States v. Lalonde*, 509 F.3d 750, 757–58 (6th Cir. 2007)). He has not done so. As he admits in his brief, trash pulls are permissible under *Greenwood*, which is "[b]inding precedent." The district court did not plainly err by failing to interpret the Fourth Amendment, *sua sponte*, in a manner inconsistent with Supreme Court precedent.

**III.**

Mathis's other argument alleges ineffective assistance of counsel. "As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990). Post-conviction proceedings are instead the customary route, but when "the record is adequate to assess the merits of the defendant's allegations," we will consider them. *Id.* The government asserts that this is such a case and we agree.

The alleged ineffective assistance occurred during sentencing. The probation office recommended that Mathis's offense level should be increased by four based on USSG § 2K2.1(b)(6)(B), which applies if the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." The rationale was that Mathis possessed a firearm in connection with his possession with intent to distribute marijuana. At sentencing, the court noted the recommended enhancement and asked Mathis's attorney if he had any objections "to the manner in which the guidelines have been applied[.]" Counsel said no and Mathis was sentenced accordingly.

Mathis now says his counsel should have objected because the jury found him not guilty of possessing a firearm in furtherance of a drug-trafficking crime. Mathis concedes that, under Supreme Court precedent, "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 157 (1997). Although Mathis does not actually claim the government failed to meet its burden of proof at sentencing, he asserts "there is at least a reasonable probability that the district court would not have applied the enhancement had [his] counsel objected." And according to Mathis, "there was no strategic reason," to not object.

Such speculation fails to satisfy the high bar required for ineffective-assistance claims. To prevail, Mathis must show that, absent his attorney's alleged mistake, "the likelihood of a different result was substantial, not just conceivable." *Bullard v. United States*, 937 F.3d 654, 662 (6th Cir. 2019) (quoting *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)) (alteration adopted). Setting aside the fact that the acquitted charge and the sentencing enhancement are not identical,[1] Mathis has merely pointed to some favorable evidence, and gaps in evidence, that might explain why the jury did not find him guilty beyond a reasonable doubt. The verdict, however, says nothing about whether there was nevertheless a preponderance of the evidence, which was the standard at sentencing. And we have upheld enhancements under the guideline when, as here, there was evidence the defendant trafficked large quantities of drugs from his home and kept a gun close by. *See, e.g.*, *United States v. Angel*, 576 F.3d 318, 322 (6th Cir. 2009) (collecting cases). Finally, the district court expressed the opinion that Mathis's given sentence was insufficient, but

---

[1] The charged offense required that Mathis possessed the gun "in furtherance" of his criminal marijuana possession. 18 U.S.C. § 924(c)(1)(A). In contrast, the guideline required only that Mathis possessed the gun "in connection with" possessing the marijuana. USSG § 2K2.1(b)(6)(B).

he received it because it was the statutory maximum.  In light of all this, we must conclude that Mathis has not shown a substantial likelihood that, had his attorney objected to the enhancement, the district court would have declined to apply it.

* * *

The judgment of the district court is AFFIRMED.

THAPAR, Circuit Judge, concurring. In our adversarial system, parties don't just need to make the right arguments; they need to make the right arguments at the right time.

Bryan Mathis makes the right argument: he says that the police violated the Fourth Amendment when they searched his trash in violation of a local ordinance. Mathis concedes that this argument is foreclosed by precedent. *See California v. Greenwood*, 486 U.S. 35 (1988). But in recent years, both judges and scholars have expressed serious doubts about that decision. *See Carpenter v. United States*, 138 S. Ct. 2206, 2266 (2018) (Gorsuch, J., dissenting); *Morgan v. Fairfield Cty.*, 903 F.3d 553, 570–71 (6th Cir. 2018) (Thapar, J., concurring in part and dissenting in part); William Baude & James Y. Stern, *The Positive Law Model of the Fourth Amendment*, 129 Harv. L. Rev. 1821, 1881–82 (2016); *see also* Tanner M. Russo, Note, *Garbage Pulls Under the Physical Trespass Test*, 105 Va. L. Rev. 1217 (2019) (discussing how recent Supreme Court decisions may have narrowed or undermined *Greenwood*). And this might have been the case to see whether it remains good law.

The problem is that Mathis didn't make this argument at the right time: namely, in the district court. As a result, our court must review the argument for plain error. *See United States v. Doxey*, 833 F.3d 692, 702 (6th Cir. 2016). And the Supreme Court will likely not review it at all. *Cf. Byrd v. United States*, 138 S. Ct. 1518, 1526–27 (2018). In the end, that's unfortunate because forfeited arguments "do not serve the development of a sound or fully protective Fourth Amendment jurisprudence." *Carpenter*, 138 S. Ct. at 2272 (Gorsuch, J., dissenting).

Going forward, I urge parties to preserve arguments based on the text and history of the Fourth Amendment. This isn't a mere formality. There are still difficult questions to be answered about (among other things) what it means for a person to be "secure in their persons, houses, papers, and effects" or what it means for a search to be "unreasonable." U.S. Const. amend. IV;

*see Morgan*, 903 F.3d at 574–75 (Thapar, J., concurring in part and dissenting in part) (considering whether state property law, common law, or some other source of law should define these terms). And one of the basic premises of our legal system is that judges are better able to answer difficult questions when they do so with help from the parties at each level of the proceedings.

In short, there are arguments to be made; parties just need to make them in time.