UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 25-2195

UNITED STATES OF AMERICA

v.

SAMUEL BARNES,
Appellant

_____

On Appeal from the United States District Court
for the District of Delaware,
No. 1:23-cr-00012-001
District Judge Maryellen Noreika

Before: PHIPPS, FREEMAN, and BOVE, *Circuit Judges*
Submitted: May 28, 2026; Filed: June 29, 2026

_____

NONPRECEDENTIAL OPINION[*]

PHIPPS, *Circuit Judge*.

The execution of a search warrant at the home of a Wilmington man led to the discovery of a firearm, ammunition, and drugs in two upstairs bedrooms. The man, who was on supervised release at the time for a prior felony conviction, was charged with being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1), and with possession of a firearm with an obliterated serial number, *see* 18 U.S.C. § 922(k). He pleaded guilty to those offenses and received a 90-month prison sentence. In calculating that sentence, the District Court applied a four-point enhancement under Guideline § 2K2.1(b)(6)(B) for possessing a firearm "in connection with another felony," which here was an uncharged drug offense. U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B) (U.S. Sent'g Comm'n

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2024).  In this appeal, the man – who does not dispute his possession of the firearm, ammunition, or drugs – contests the application of the § 2K2.1(b)(6)(B) enhancement.  For the reasons below, we will affirm his sentence.

## BACKGROUND

In late 2021, a federal law enforcement task force in Delaware was conducting a drug-trafficking investigation of a Wilmington man, Floyd Tolbert.  As part of that investigation, task force members obtained warrants from a state court to search five residences that were believed to be associated with Tolbert's drug dealing.

One of those residences was located on 5th Street in Wilmington, where Samuel Barnes resided.  Barnes was on supervised release at the time for a felony conviction for distributing heroin, but he was not a target of this investigation.

In searching that residence, law enforcement discovered a gun, ammunition, and drugs in two upstairs bedrooms.  In the closet of the rear upstairs bedroom, they found an unloaded Masterpiece Arms Grim Reaper 9mm pistol with an obliterated serial number and an extended magazine loaded with twenty 9mm rounds.  In the front upstairs bedroom, which Barnes admitted was his bedroom, they found a box of 9mm ammunition, additional magazines, about 11 grams of crack cocaine, a digital scale with white residue, and over $6,000 in cash.  Barnes was present during the search, and he told law enforcement that all of the items upstairs, including the firearm, magazines, and drugs, belonged to him.  He further admitted to previously selling crack cocaine, though he asserted he was "out of the game."  Gov't Resp. to Sent'g Mem. 5 (App. 71).

Those developments led to charges against him.  At the federal level, a superseding indictment returned in September 2023 charged Barnes with being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1), and with possession of a firearm with an obliterated

serial number, *see* 18 U.S.C. § 922(k).  His conduct also violated the terms of his supervised release.

Those charges were within the jurisdiction of the District Court, *see* 18 U.S.C. § 3231, and Barnes pleaded guilty to them.  The focus then became his sentence.  The presentence report prepared by the Probation Office placed Barnes in criminal history Category III and recommended a total offense level of 27, for a sentencing range of 87 to 108 months' imprisonment.

In reaching the total offense level of 27, the presentence report applied a four-point enhancement based on a Guideline, then codified at § 2K2.1(b)(6)(B),[1] which applies when the defendant "used or possessed any firearm or ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B) (2024).  The commentary to the Guideline instructs that the other felony offense can be uncharged, *see* U.S.S.G. § 2K2.1 cmt. n.14(C) (2024), and Barnes did not dispute that selling crack cocaine qualifies as another felony offense.  *See United States v. Perez*, 5 F.4th 390, 394 (3d Cir. 2021); *cf. United States v. McIntosh*, 124 F.4th 199, 214 (3d Cir. 2024) (observing that "no Court of Appeals has yet addressed whether the Commission's interpretation of 'another felony offense' is reasonable under *Kisor*'s framework").  Barnes did contest that his possession of the pistol was 'in connection with' that felony by asserting that he was no longer dealing drugs and that there was "no evidence that he ever possessed the weapon while engaging in drug sales."  Def.'s Sent'g Mem. 10 (App. 65).

This Court has determined that the term 'in connection with' as used in the Guideline is genuinely ambiguous on the grounds that it could mean a causal or logical connection to the other felony offense or it could mean a coincidental physical connection

---

[1] By operation of Amendment 834 to the Guidelines, effective November 1, 2025, this provision has been designated as § 2K2.1(b)(7)(B).  *See* U.S.S.G. App. C, amend. 834.

to the other felony offense. *See Perez*, 5 F.4th at 395–96. *But see id.* at 404 (Bibas, J., concurring in the judgment). Because of that ambiguity, it is permissible to consider the commentary to the Guideline, and that consisted of two notes designated at the time as Note 14(A) and Note 14(B).[2] *See id.* at 396–99.

Note 14(A) provided a general interpretation of the phase 'in connection with' for purposes of the § 2K2.1(b)(6)(B) enhancement. Under its guidance, the enhancement would apply "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1 cmt. n.14(A) (2024).

Note 14(B) provided a specific means of satisfying the 'in connection with' requirement for drug crimes. Under that note, the enhancement applies if "a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1 cmt. n.14(B) (2024). In interpreting Note 14(B), this Court in *United States v. Perez*, 5 F.4th 390 (3d Cir. 2021), reasoned that it "creates a rebuttable presumption that the enhancement should apply" when the proximity requirement is met. *Id.* at 400. The *Perez* decision then identified four non-exhaustive factors for rebutting the proximity-based presumption:

(1) the type of gun involved, with handguns more likely to be connected with drug trafficking than hunting rifles;

(2) whether the gun was loaded;

(3) whether the gun was stored (or, we add, possessed) near the drugs or drug-related items; and

(4) whether the gun was accessible.

*Id.* at 401 (citing *United States v. Napolitan*, 762 F.3d 297, 308 (3d Cir. 2014)).

At sentencing, Barnes contested the applicability of the § 2K2.1(b)(6)(B) enhancement. In evaluating Barnes's challenge, the District Court considered both

<hr>

[2] As of the November 1, 2025, those notes have been redesignated as Notes 13(A) and Note 13(B) respectively. *See* U.S.S.G. App. C, amend. 834.

Note 14(A) and Note 14(B), and concluded that under either, the § 2K2.1(b)(6)(B) enhancement applied. As to Note 14(A), the District Court considered the facts and determined that the nexus between the residence, suspected drug trafficking, and Barnes's other items meant that the firearm had at least the potential to facilitate drug dealing. For Note 14(B), the District Court concluded that the proximity of the drugs to the firearm established the presumptive applicability of the § 2K2.1(b)(6)(B) enhancement. And the District Court then determined that Barnes had not rebutted the presumption.

With the § 2K2.1(b)(6)(B) enhancement and the Guidelines range of 87 to 108 months, the District Court imposed a 90-month prison term – on the low-end of the range, but still 19 months above the high-end of the range if the enhancement did not apply, which would have been 57 to 71 months.

Through a notice of appeal, Barnes invoked this Court's appellate jurisdiction, *see* 18 U.S.C. § 3742(a), to challenge the application of the § 2K2.1(b)(6)(B) enhancement.

### DISCUSSION

Because the District Court relied on both Note 14(A) and Note 14(B) as independent grounds to justify the application of § 2K2.1(b)(6)(B), Barnes must overcome both of those rationales. It is not necessary here to evaluate the Note 14(A) rationale because Barnes's challenge to the District Court's factual finding of proximity needed for the application of Note 14(B) cannot succeed on clear-error review, which requires a definite and firm conviction that a mistake was made. *See United States v. Adair*, 38 F.4th 341, 354 (3d Cir. 2022) (explaining that to find clear error, an appellate court must have a "definite and firm conviction that a mistake has been committed" (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985))).

According to Barnes, the key weaknesses in the District Court's findings are that the prosecution presented no evidence as to the actual distance between the gun and the drugs and that the District Court made a finding of only 'proximity,' not 'close proximity.' But the record establishes that the drugs and gun were found in separate bedrooms both located on the second floor of Barnes's residence. The drugs were found in the dresser of one bedroom, and the gun was discovered in the closet of another. Thus, the record does not produce a definite and firm conviction that the pistol in the closet of one upstairs bedroom was not in close proximity to the drugs – which were next to ammunition of the same caliber as the gun – in a bedroom located on the same floor. Accordingly, under Note 14(B), the § 2K2.1(b)(6)(B) enhancement presumptively applies.

The District Court also did not clearly err in finding that Barnes failed to rebut the connection indicated by the close proximity between the firearm and drugs. To do so, Barnes had to show that the firearm "had no relationship to drug-related activities (*i.e.*, that the presence of the firearm was mere accident or coincidence) and thus did not have the potential to facilitate a drug-trafficking offense." *Perez*, 5 F.4th at 400; *see also United States v. Clark*, 115 F.4th 245, 250 (3d Cir. 2024) (explaining "that the phrase 'in connection with' should be 'construed expansively' so that it may apply to 'a wide range of relationships between the firearm possession and the other felony offense'" (quoting *United States v. Loney*, 219 F.3d 281, 284 (3d Cir. 2000))).

After applying the four *Perez* factors, the District Court determined Barnes had not shown that there was no relationship between the gun and drug trafficking. That conclusion is not definitely and firmly incorrect. Barnes's firearm was a pistol with an obliterated serial number, and despite being found in a different upstairs room from the drugs, the pistol was readily accessible and next to a loaded, extended magazine, suggesting that

6

Barnes sought to protect himself and the nearby drugs in a manner consistent with drug trafficking. *Cf. United States v. Tajwar*, 167 F.4th 867, 872 (6th Cir. 2026) ("[I]n other words, his gun 'facilitated' or 'had the potential to facilitate' his criminal activity by 'emboldening' him to engage in such conduct." (quoting *United States v. Angel*, 576 F.3d 318, 321–22 (6th Cir. 2009))). Nor does Barnes's 'out of the game' statement produce a definite and firm conviction that the pistol was unconnected to drug dealing. That statement cannot easily be reconciled with Barnes's admission of prior dealing or the drugs and digital scale with white residue in his bedroom, so it was permissible for the District Court not to credit it. On those facts, the District Court did not commit clear error in finding that Barnes had not rebutted the presumptive application of Note 14(B).

Perhaps sensing that his factual challenge to Note 14(B) is not enough, Barnes takes on Circuit precedent. He argues that the *Perez* decision – which found genuine ambiguity in the phrase 'in connection with' as used in § 2K2.1(b)(6)(B) – was wrongly decided and that the text of the Guideline demands a logical connection between the firearm and the drugs. Because a panel of this Court cannot ordinarily alter prior precedent absent an intervening change in law, *see* 3d Cir. I.O.P. 9.1, this contention is only a preservation play – and an incomplete one at that since the argument was not raised in the District Court.

But even construing the phrase 'in connection with' to require a logical nexus between the firearm and the drug crime, the District Court's factual findings suffice without the need for remand. *See, e.g.*, *Adair*, 38 F.4th at 354–55 (relying on the District Court's factual findings despite a change in meaning to the Guidelines). That is so because there is a logical connection between Barnes's 9mm pistol with an obliterated serial number and the crack cocaine in his bedroom, both found upstairs in a residence searched for its association with drug trafficking. This challenge therefore fails as well.

7

## CONCLUSION

For the foregoing reasons, we will affirm the judgment of sentence.